JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California 92101-6128
Telephone: (619) 699-5995
FAX (619) 699-5996
Attorney for Defendant RUBIO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DIEGO RUBIO-GASTELUM,<br>Defendant. | CASE NO. 07CR3283WQH<br><br>NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY AND LEAVE TO FILE FURTHER MOTIONS |

TO: KAREN HEWITT, UNITED STATES ATTORNEY;
CHRISTOPHER TENORIO, ASSISTANT UNITED STATES ATTORNEY:

The defendant, Diego Rubio-Gastelum, by and through his counsel, Kerry Bader, respectfully asks this Court to grant the motions listed below.

Dated: December 17, 2007

//JOAN KERRY BADER
Joan Kerry Bader,
Attorney for Defendant
Rubio-Gastelum

//

//

//

//

//

//

JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California 92101-6128
Telephone: (619) 699-5995
fax (619)699-5996
Attorney for Defendant RUBIO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. DIEGO RUBIO-GASTELUM, Defendant. | CASE NO. 07CR3283WQH<br><br>MOTION TO COMPEL DISCOVERY |

**I.**

**STATEMENT OF FACTS**

No discovery has been provided to date in this matter.

On or about November 18, 2007, Mr. Rubio was arrested at a Border Patrol checkpoint in the Southern District of California. 31 USC section 5332, Bulk Cash Snmuggling, in the amount of approximately $250,000.00. He has since been indicted and is charged with Money Laundering, a violation of 18 USC section 1956h.

Mr. Rubio remains in custody at the Metropolitan Correctional Center on San Diego, California.

**II.**

**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

Mr. Rubio moves for the production of the following discovery. *This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies."* See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989). This would include any and all ***"ancillary files"*** concerning Mr. Rubio in the custody of any governmental agency or entity involved in this case.

(1) The Defendant's Statements. The government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

Counsel for Mr. Rubio requests any and all of these items at least two weeks before any evidentiary motion hearing.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the government to turn over all arrest reports, notes, dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, audio or video or dispatch tapes or DVDs or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I).

(3) Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. Accordingly, any and all Brady, Henthorne and Giglio information concerning the primary and secondary inspectors who interacted with Mr. Rubio be handed over to the defense before any evidentiary hearing. If any of these

agents are under investigation the defense specifically asks for such information. United States v. Bagley, 473 U.S. 667 (1985), on remand to, 798 F.2d 1297 (9th Cir. 1986); United States v. Agurs, 427 U.S. 97 (1976).

(4) Any Information That May Result in a Lower Sentence Under The Guidelines. The government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to the appropriate Guideline to be utilized in this case. In this case, it appears that the interrogating agents obtained information from Mr. Gonzalez prior to their taped interrogation. All evidence of this should be forwarded to the defense.

(5) The Defendant's Prior Record. The defendant appears to have received a copy of his prior record. Fed. R. Crim. P. 16(a)(1)(B).

(6) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests

that such notice be given four weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) Evidence Seized. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)©. This includes but is not limited to all evidence seized as a result of this arrest, both from Mr. Rubio's person and from the vehicle which he was driving. Mr. Rubio asks to have the monetary evidence preserved and the opportunity to inspect all of it.

(8) Request for Preservation of Evidence. The defendant specifically requests the preservation of all dispatch tapes, audio or video tapes, or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case.

This request includes, but is not limited to, all of the property seized from the vehicle Mr. Gonzalez was driving, vehicles related to him, his personal effects, and any evidence seized from the defendant or any third party. These items include, but are not limited to, any and all of Mr. Rubio's property that was seized by the arresting agents.

In the event of any disputes in this case, Mr. Rubio asks the Court to order the Government to preserve all rough notes of *all* of the agents who were involved in this case.

This request would include all agents involved in the apprehension of Mr. Rubio, the seizure and search of the vehicle and its contents and the arrest of Mr. Rubio. This would include each and every agent from primary inspection, secondary inspection and any agent involved in the post-arrest procedures, such which includes, but is not limited to the search of the vehicle and its contents.

The preservation of these notes is requested for Jencks and Brady purposes.

Specifically, the defense asks the Court to order the Government to provide the defense with the notes prior to the suppression hearing in this matter so that there will be no need to interrupt the hearing. The notes are relevant to the question of voluntariness, and the inadequacy and the inaccuracy of the Miranda warnings. Related to this, the defense reiterates its request for any and all training materials related to the agents' training in searches, seizures and interrogating suspects. These may be relevant to any suppression issues that might be raised on Mr. Rubio s behalf.

In addition, Mr. Rubio requests that the Assistant United States Attorney assigned to this case personally review *all personnel* files of each agent involved in the present case for impeachment material. Kyles v. Whitley, 115 S. Ct. 1555 (1995); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), appeal after remand, 985 F.2d 575 (9th Cir. 1992).

(9) Tangible Objects. The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, computers, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(2)(C).

(10) Evidence of Bias or Motive to Lie. The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony, including but not limited to, the agents involved in the seizure and the arrest.

(11) Impeachment Evidence. The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant, including but not limited to, the agents involved in the arrest and any other persons arrested on the same day as Mr. Gonzalez. See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland, supra.

Discovery of Henthorne evidence is also relevant at this time. Therefore, the defense respectfully asks the Court to order the government to provide this prior to any evidentiary hearing. The government agents' integrity and training is at stake; therefore, this material needs to be

provided to the defense prior to the suppression hearing. See, generally, Federal Rule of Evidence, Rule 806:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)C,(D) or (E), has been admitted into evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness.[1]

Impeachment evidence is exculpatory evidence within the meaning of Brady. Giglio, 405 U.S. at 154, United States v. Bagley, 473 U.S. 667, 676 (1985). Brady and Giglio includes material that *bears on the credibility of a significant witness in the case*, such as the interrogating agents. United States v. Brumel-Alvarez, 991 F.2d 1452, 1461 (9th Cir. 1993)(italics added).

"Because the prosecution is in a unique position to obtain information known to other agencies of the government, it may not be excused from disclosing what it does not know but could have learned." Carriger v. Stewart, 132 F.3d 463, 480 (9th Cir. 1997)(en banc).

In United States v. Blanco, 392 F.3d at 388, the Ninth Circuit held that the government wrongly withheld impeachment evidence concerning a Confidential Informant [CI] in violation of Giglio and Brady, specifically, the DEA's failure to give the prosecuting attorney information that the CI had been an illegal alien and was given a

---

[1]The defense does not concede that any of the agents' statements are admissible against the defendant, but in the event they are admitted, the defense requests this discovery.

special immigration visa in exchange for his work as an informant:

> A prosecutor's duty under Brady necessarily requires the cooperation of other government agencies who might possess Brady material. In United States v. Zuno-Arce, 44 F.3d 1420 (9th Cir.)(as amended), we explained why it is the government's not just the prosecutors' conduct which may give rise to a Brady violation.
>
> Exculpatory evidence cannot be kept out of the hands of the defendant just because the Prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor might have it, and by allowing the prosecutor tell the investigators not to give him certain materials unless he asks for them. Id. See also: United States v.Monroe, 943 F.2d 1007, 1011, n.2 (9th Cir. 1991)(stating that "the prosecutor must disclose any [Brady] information within the possession or control of law enforcement personnel.")(quoting United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 824 (1985). There is no ambiguity in the law, the obligation under Brady and Giglio is the obligation of the government, not merely the obligation of the prosecutors. As we wrote in Zuno-Arce, "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it where an investigating agency does. 44 F.3d at 1427. To repeat, Brady and Giglio impose obligations not only on the prosecutors, but on the government as a whole.

The defense discovery request also includes preservation of the vehicle and all of its contents. The defense asks the Court for permission to view the vehicle and all of its contents and to reweigh the marijuana seized in this case.

(12) Evidence of Criminal Investigation of Any Government Witness. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal

conduct, including but not limited to, the agents involved in the arrest.

(13) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic including but not limited to, the agents involved in the arrest.

(14) Witness Addresses. The defendant requests the name and last known address of each prospective government witness, including expert witnesses. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness.

(15) Name of Witnesses Favorable to the Defendant. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

(16) Statements Relevant to the Defense. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(17) Jencks Act Material. The defendant requests production in advance of trial of all material, including

dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid delays at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(18) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony and/or cooperation in this case, and all other information which could arguably be used for the impeachment of any government witnesses. This includes tax returns and remuneration given to cooperating witnesses and agents, and any other item, tangible or intangible that indicates was given or offered to a witness in exchange for his or her cooperation, such as any and all gifts, favors, and lenient treatment given to such persons or their family members or friends. Lenient treatment includes but is not limited to favorable plea agreements, sentencing recommendations, grants of visas or other immigration benefits, preferred placement and treatment in the incarceration context and preferential bond

recommendations. This request also extends to but is not limited to any modifications, assistance or forgiveness given by the government to a witness including any debt or tax relief or other compensation.

(19) <u>Agreements Between the Government and Witnesses</u>. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity in any forum and jurisdiction, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(20) <u>Informants and Cooperating Witnesses</u>. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant[s] who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Gonzlez. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. The defense needs the information so that it may prepare to defend the case. Without the names and

information that these people are allegedly supplying, there can be no meaningful preparation or defense or trial, and will result in various constitutional violations. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(21) Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities. In addition, Mr. Gonzalez requests any and all evidence of any witness' inability to tell the truth, any and all investigations or arrests or convictions and any and all medical, psychological, drug or alcohol-related problems.

(22) Residual Request. Mr. Rubio intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mr. Rubio requests that the government provide him and his attorney with the above requested material sufficiently in advance of a substantive motion hearing and/or trial to avoid unnecessary delay prior to cross-examination.

**III.**

## Mr. RUBIO REQUESTS LEAVE TO FILE FURTHER MOTIONS

In the event the defense receives more discovery or additional legal issues or facts arise, it is requested that Mr. Rubio be allowed the opportunity to file additional motions.

## IV.

## CONCLUSION

For the foregoing reasons, Mr. Rubio respectfully requests that the Court grant his motions to compel discovery and for leave to file further motions.

Dated: December 17, 2007 Respectfully submitted,

//JOAN KERRY BADER
JOAN KERRY BADER
Attorney for Mr. Rubio